UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

|  |  |
|---|---|
| GEOFF TURNER, as Business Manager and on behalf of INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1200, AFL-CIO, | Civil Action No.: |
|  | 21-CV-03766 |

Petitioner**,**

-against-

CBS BROADCASTING INC.

Respondent**.**
-----------------------------------------------------------

## PETITION TO ENFORCE ARBITRATION SUBPOENA

Petitioner, Geoff Turner, as Business Manager and on behalf of International Brotherhood of Electrical Workers Local 1200, AFL-CIO (the "Union" or "Local 1200" or "Petitioner"), by and through its attorneys, COLLERAN O'HARA & MILLS L.L.P., for its Petition respectfully alleges as follows:

## INTRODUCTION

1. Petitioner seeks an order from this Court under the Federal Arbitration Act, 9 U.S.C. § 7, compelling the Respondent CBS BROADCASTING INC. ("CBS") to comply with the subpoena issued by Arbitrator Michael Capone on March 19, 2021, an arbitrator sitting in this district.

## THE PARTIES

2. At all times hereinafter mentioned, Petitioner, Local 1200 was and is a labor organization as the term is defined in 29 U.S.C. § 152 and is a resident of the State of Maryland with its principal place of business located at 6500 Seven Locks Road #218, Cabin John, Maryland, 20818. Geoff Turner is the duly elected Business Manager of Local 1200.

3. At all times hereinafter mentioned, Respondent, CBS is a television broadcasting and media company with its principal place of business located at 51 West 52nd Street, New York, New York, 10019.

## JURISDICTION AND VENUE

4. This is a proceeding to enforce a subpoena issued in an arbitration arising under Section 7 of the Federal Arbitration Act, 9 U.S.C. §7.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 as the underlying arbitration is conducted pursuant to a collective bargaining agreement ("CBA") governed by Section 301 of the Labor Management Relations Act ("LMRA").

7. Venue is proper in this judicial district pursuant to 9 U.S.C. §7 because the hearing is to take place before an arbitrator sitting in this district.

8. Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b), because Respondent, CBS, is domiciled in and operates or does significant business in this judicial district. Additionally, a substantial part of the events giving rise to this petition occurred in this judicial district.

## BACKGROUND

9. Local 1200 is a labor organization that represents, among others, technicians employed by CBS to perform technical operations for broadcast television such as recording footage, editing content, audio, quality control, playback, and other technical functions related to the broadcast of television events, news, sports and other content.

10. Mr. Glen Roth was employed as a freelance camera operator by CBS until June 25, 2020. Specifically, Mr. Roth performed camera operations for CBS since approximately 1996, working on sporting events such as CBS's production of College football games in the SEC, NCAA March Madness Basketball Tournament, the Masters, other PGA Golf Tournaments as well as other events. During his employment, Mr. Roth performed camera operations at four Superbowls and won four Emmys.

11. Mr. Roth is a member of Local 1200 and is covered by the CBA to which CBS and Local 1200 are bound. A copy of the Collective Bargaining Agreement between CBS and the International Brotherhood of Electrical Workers, AFL-CIO is annexed hereto as Exhibit "A."

12. Although Mr. Roth is categorized as a freelance employee under the CBA, Mr. Roth has regularly performed work for CBS for approximately twenty-five (25) years. Over those twenty-five years, Mr. Roth would frequently be assigned to work the same sporting events broadcast by CBS year after year.

13. In his twenty-five years of employment with CBS, Mr. Roth was an exemplary employee. No complaints of any kind were ever raised against him, nor any discipline imposed on him until on or about February 9, 2020.

14. At no time in his approximately twenty-five years of service at CBS did Mr. Roth hold a position where he had the ability to hire, fire, promote, discipline, or otherwise determine the terms and conditions of employment for any other individual employed by CBS. At no time during his employment did Mr. Roth assign work assignments to other employees or determine which employees would work which events.

## SEXUAL HARASSMENT AT CBS

15. On November 20, 2017, The Washington Post published an article by Irin Carmon and Amy Brittain entitled "Eight women say Charlie Rose harassed them – with nudity, groping, and lewd calls" available at: https://www.washingtonpost.com/investigations/eight-women-say-charlie-rose-sexually-harassed-them--with-nudity-groping-and-lewd-calls/2017/11/20/9b168de8-caec-11e7-8321-481fd63f174d_story.html (last accessed April 27, 2021). CBS suspended Mr. Rose immediately and terminated him a few months after.

16. On July 27, 2018, the New Yorker published an article by Ronan Farrow entitled "Les Moonves and CBS Face Allegations of Sexual Misconduct" available at: https://www.newyorker.com/magazine/2018/08/06/les-moonves-and-cbs-face-allegations-of-sexual-misconduct (last accessed April 27, 2021). The news rocked CBS as Mr. Moonves was its Chairman and CEO with over twenty years of experience as a media executive. The article detailed stories of six (6) women who described either forcible touching or kissing during business meetings, or physical intimidation and threats to end their careers. *Id.*

17. The sexual harassment claims at CBS were so pervasive, and became so public, that in 2018 CBS made a public effort to demonstrate that it has "turned a page" by hiring an outside law firm to investigate the allegations against Mr. Moonves and the broader workplace culture at the Company. *See* Business Insider, "CBS is rolling out new sexual harassment programs following Les Moonves, Charlie Rose allegations", by Abby Jackson, December 14, 2018 available at: https://www.businessinsider.com/cbs-settlement-workplace-culture-2018-12 (last accessed April 27, 2021). According to

Business Insider, the Company conducted an internal survey about workplace culture and rolled out new programs regarding harassment in the workplace. *Id.*

18. Also on December 14, 2018, The New York Times published an article by John Koblin entitled "The Year of Reckoning at CBS: Sexual Harassment Allegations and Attempts to Cover Them Up" available at: https://www.nytimes.com/2018/12/14/business/media/cbs-sexual-harassment-timeline.html (last accessed April 27, 2021). The Article describes a "companywide reckoning in the wake of the #MeToo movement…" that led to Mr. Rose, Mr. Moonves, and "60 Minutes" executive producer Jeff Fager losing their jobs because of workplace conduct. The article also points to a $9.5 million settlement between CBS and actress Eliza Dushku stemming from Ms. Dushku's claims that she was written off of the hit show "Bull" after confronting actor Michael Weatherly about harassing her. Upon information and belief, Mr. Weatherly still stars on "Bull," which continues to air on CBS.

19. On or around December 17, 2019, Cassandra Vinograd commenced an action against CBS Broadcasting Inc. in New York State Supreme Court in New York County, Index #162157/2019. In the Complaint, Ms. Vinograd alleges, among other things, that Michael Gavshon, a 60 Minutes producer that was about thirty (30) years her senior, sent Ms. Vinograd a picture of himself and a friend from when they were younger, urinating on coals with their penises exposed. Ms. Vinograd raised this complaint, among others about Mr. Gavshon's behavior to her superiors and human resources. Upon information and belief, the matter was settled out of Court and Mr. Gavshon remains employed by CBS. *See, also*, Newsweek, "CBS Producer Calls #MeToo Rebranding a 'Sham' in Sexual Harassment Lawsuit" by James Crowley, December 18, 2019, available at: https://www.newsweek.com/cbs-lawsuit-60-minutes-metoo-harassment-1477816.

20. On January 26, 2021, the New York Times published an article by Derrick Bryson Taylor entitled "CBS Suspends Two Executives Accused of Racists and Sexist Conduct" available at https://www.nytimes.com/2021/01/26/business/media/cbs-suspended-peter-dunn-david-friend.html (last accessed April 27, 2021). The article notes that the President of CBS Television Stations and Senior Vice President of News for TV stations were placed on administrative leave pending an investigation into allegations that the two bullied female managers and blocked efforts to hire and retain Black Journalists.

21. Upon information and belief, these are just a few of the allegations of sexual harassment leveled against high level executives and management of CBS over the past three to five years; upon information and belief, there are more. The common thread is that of high-level male executives and managers using their positions and power to engage in continuous and persistent patterns of inappropriate and harassing conduct towards female employees.

22. It is against this backdrop of multiple sexual harassment claims against high level and high-profile employees of CBS, a very public exposition of the Company's culture, ongoing lawsuits, and a public effort to change the perception company's culture and its handling of sexual harassment complaints that Glen Roth, a freelance photographer that has worked for CBS for over 23 years with a clean disciplinary record, was terminated.

### THE ALLEGATIONS AGAINST MR. ROTH AND CBS'S ALLEGED INVESTIGATION

23. In February 2020, Mr. Roth was assigned to work the Pro-Am Golf Tournament at Pebble Beach, California. Mr. Roth traveled to Pebble Beach on Wednesday, February 5, 2020 and worked Thursday through Sunday February 6 through February 9.

24. Upon information and belief, at the end of the workday on Sunday February 9, 2020, a woman whose identity remains unknown to the Union allegedly made a Complaint to CBS management at Pebble Beach that a "short man" she was working with allegedly inappropriately tapped her on her rear end twice.

25. Upon information and belief, this unidentified woman only worked for CBS one day in her life, February 9, 2020.

26. About one month later, on March 10, 2020 a conference call was held between Michael Roderick, Vice President of CBS Employee Relations, Glen Roth, and International Brotherhood of Electrical Workers representative Neil Ambrosio.

27. During this call, Mr. Roderick stated that an allegation was raised regarding Mr. Roth's behavior at the Pro Am Golf Tournament on February 9 and that he was investigating the allegation.

28. Mr. Roth denied that he ever touched any co-worker on the rear end whether inadvertently or otherwise.

29. Mr. Roderick held a follow-up conference call with Mr. Roth on April 14, 2020 inquiring as to whether there was any additional information and asking similar questions that were asked on the March 10 conference call. Mr. Roderick stated that he would complete his investigation, send his findings for review, and Mr. Roth would be notified of the findings.

30. It remains unknown to the Union what, if any, additional steps Mr. Roderick took during his investigation.

31. Upon information and belief, no one corroborated the allegation of inappropriate touching during the investigation.

32. Upon information and belief, no one came forward in the investigation claiming that Mr. Roth engaged in any similar inappropriate behavior at any point in his twenty (20) plus year career.

33. Upon information and belief, CBS failed or refused to interview a number of potential witnesses provided to CBS by Mr. Roth.

34. On or around June 25, 2020, CBS Director of Human Resources Nadiyah Romeny notified Mr. Roth that CBS completed its investigation of the allegations raised against Mr. Roth. Ms. Romney stated that CBS "thoroughly investigated the complaint. The investigation included interviewing you and others who were likely to be familiar with the facts."

35. The June 25, 2020 communication stated that CBS's investigation "revealed that your behavior violated Company policy including the Company's Non-Discrimination and Anti-Harassment Policy." It concluded that "you are no longer eligible for employment on any future assignments and you are disqualified from working for any other ViacomCBS event or their affiliated or related events." A copy of CBS's June 25, 2020 communication to Mr. Roth is annexed hereto as Exhibit "B".

36. Mr. Roth's last day of work for CBS was February 10, 2020. In arbitration, the Union is seeking that he be placed back on the referral list as well as back pay for events he has regularly worked for CBS, but was refused in 2020. The total amount of the back pay claimed by Mr. Roth is currently approximately ninety-thousand dollars ($90,000) and counting as he continues to miss work events.

## THE COLLECTIVE BARGAINING AGREEMENT

37. Freelance employees are not covered by the discharge section of the CBA.

38. Sideletter 44 to the CBA is entitled "Preference of Employment-Freelance and Per Diem

    Employees."  It provides:

After a Freelance or Per Diem employee has worked for two (2) consecutive years with the Employer, such Freelance or Per Diem employee will have preference of employment, meaning that a Freelance or Per Diem employee will not be eliminated from the referral process for arbitrary or capricious reasons.

*See* Ex. A, Sideletter 44, p.130.

39. The CBA includes a grievance procedure in Article II.  Arbitration is the final step in the

    grievance procedure.  Section 2.03(a)(ii) of the CBA provides that arbitrations are to be

    conducted pursuant to applicable laws and statutes and rules and regulations of the

    American Arbitration Association.  Furthermore, Section 2.03(a)(iii) provides, in part, that

    any decision or award of an Arbitrator shall be final and binding upon both parties and may

    be enforced or reviewed in any court of competent jurisdiction.

*See id.* at Article II pp. 19-21, Section 2.03 at pp. 20-21.

## THE UNION'S GRIEVANCE

40. During CBS's investigation of the allegations against Mr. Roth, and after the Company's

    decision to terminate Mr. Roth, the Union sought information from the Company regarding

    the nature and outcome of the Company's investigation.  Upon information and belief, the

    Company failed and refused to provide any information to the Union other than a redacted

    text message from February 9, 2020, allegedly from the co-worker who raised the

    complaint against Mr. Roth to someone in CBS management.

41. On August 20, 2020, the Union filed a grievance against the Company alleging that the

    Company's action against Mr. Roth violated the CBA, that the Company failed to conduct

a full and fair investigation, and that the Company's treatment of Mr. Roth was different than its treatment of other employees with similar complaints raised against them under the Company's policies. A copy of the Union's grievance is attached hereto as Exhibit "C".

42. The Union and the Company were not able to resolve the dispute through the grievance process and on or around November 17, 2020, the Union demanded arbitration.  The arbitration demand set the location for the hearing to occur in New York City, New York and the demand was filed with AAA's New York office. A copy of the Union's demand for arbitration is attached hereto as Exhibit "D".

43. Pursuant to the CBA, arbitrations are to be conducted in accordance with the rules of the American Arbitration Association ("AAA"). *See* Ex. A at Section 2.03(a)(ii), p. 20.

44. Pursuant to the CBA, any decision or award of the arbitrator is final and binding on both parties and may be reviewed or enforced in a court of competent jurisdiction. *See* Ex. A at Section 2.03(a)(iii), p. 20.

45. Pursuant to AAA's arbitrator selection process, Arbitrator Michael Capone was designated as the arbitrator for this matter and a virtual hearing was scheduled for March 23, 2021.

46. On February 24, 2020, the Union, through its attorneys, submitted an information request to CBS, through its attorneys. Among the information requested were the following items:

   a. A copy of any written complaint made against Mr. Glen Roth arising out of his work for CBS at the Pro-Am tournament at Pebble Beach in February 2020.

   b. The name, telephone number, email, mailing address, and title of any and all CBS employees who were interviewed by CBS during its investigation into the allegations against Mr. Roth arising from his work at the Pro-Am tournament at Pebble Beach in February 2020.

   c. Copies of any statements written or prepared by the individuals identified in Request #2, or copies of any notes, reports, or memoranda prepared by the investigators during or after said interviews.

d. The name, telephone number, email, and mailing address of any individual not employed by CBS who was interviewed by CBS during its investigation into the allegations against Mr. Roth arising from his work at the Pro-Am tournament at Pebble Beach in February 2020.

e. Copies of any statements written or prepared by the individuals identified in Request #4, or copies of any notes, reports, or memoranda prepared by the investigators during or after said interviews.

f. The names and titles of all CBS employees who conducted the investigation into the allegations against Mr. Roth arising from his work at the Pro-Am tournament at Pebble Beach in February 2020.

g. A copy of Glen Roth's entire personnel file.

h. Copies of All reports/investigations, training records, management notes pertaining to Mr. Glen Roth.

i. Copies of all communications from the complainant to members of CBS management or supervisions regarding Mr. Glen Roth.  Such communications shall include, but are not limited to, text messages, emails, letters, direct messages on social media platforms, and/or direct messages on any platform used by CBS to communicate with its employees.

j. Copies of all communications from any individual to members of CBS management regarding Mr. Glen Roth's performance of work at the Pro-Am Tournament at Pebble Beach in February 2020.  Such communications shall include, but are not limited to, text messages, emails, letters, direct messages on social media platforms, and/or direct messages on any platform used by CBS to communicate with its employees.

k. The name, telephone number, email and mailing address of every individual CBS intends to call as a witness at the arbitration.  If the proposed witness is or was an employee of CBS, please provide their title and last date of employment.

l. Copies of all investigation notes, memoranda, reports, or other documentation prepared by CBS or its employees in connection with this investigation.

m. All records of any discipline, written or verbal, issued to Mr. Glen Roth.

n. Any "crew lists" or production memos for each day of set-up and production of the Pro-Am Tournament at Pebble Beach in February 2020.

A copy of the Union's information request is attached hereto as Exhibit "E".

47. Discussions were held between the attorneys for CBS and Local 1200 regarding the information request, but CBS did not provide any documents or information responsive to the Union's request.

48. Rule 27 of the AAA's labor arbitration rules is entitled "Evidence and Filing of Documents."  It provides, in part:

… An arbitrator or other person authorized by law to subpoena witnesses and documents may do so independently or upon the request of any party. The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant and conformity to legal rules of evidence shall not be necessary…

49. By virtue of agreeing to follow the labor arbitration rules of the AAA in the CBA, Local 1200 and CBS have agreed to follow Rule 27.

50. On Monday March 15, 2021, Union counsel, Michael Bosso, emailed Arbitrator Capone and copied CBS attorney, Gregory Hessinger, Esq., a cover letter requesting the Arbitrator issue a subpoena with a subpoena attached for the Arbitrator's signature.  The information sought in the subpoena mirrored the Union's information request.  A copy of the Union's request for a subpoena is annexed hereto as Exhibit "F".

51. CBS' attorney requested to be heard on the matter and Arbitrator Capone scheduled a conference call for Friday March 19, 2021 at 5:00pm.  Email correspondence regarding the request and scheduling of a conference call are annexed hereto as Exhibit "G".

52. The conference lasted approximately one hour with both parties, through their attorneys, stating their positions regarding the relevancy and alleged privileged/confidentiality of the sought-after information.  After both parties had an opportunity to be heard, Arbitrator Capone announced his decision that he would sign and issue the subpoena ordering CBS to turn over the documents requested by the Union.

53. At 6:21p.m. on March 19, 2021, Arbitrator Capone emailed a signed subpoena to Michael Bosso and Gregory Hessinger, Esq. A copy of the Arbitrator Capone's email correspondence as well as the subpoena signed by Arbitrator Capone are annexed hereto as Exhibit "H".

54. At 6:42p.m. Mr. Hessinger acknowledged that he could accept the email of the subpoena on behalf of CBS.  A copy of the email correspondence acknowledging receipt of the subpoena is attached hereto as Exhibit "I".

55. On Monday March 22, 2021, CBS, through its attorneys, submitted its response to the subpoena.  In its response, CBS failed and refused to provide certain subpoenaed documents and simply restated its position that such documents were privileged attorney-client communications and/or attorney work product.  A copy of CBS's email response to the subpoena is attached hereto as Exhibit "J".

56. Despite being compelled by subpoena to do so, CBS has refused to provide the following to the Union:

    - Mr. Roderick's investigation report.

    - Any notes from Mr. Roderick's investigation.

    - Any documentation prepared in the course of the investigation of the allegations made against Mr. Roth.

    - The names and contact information of the individuals interviewed by CBS as part of its investigation, or of the individual that made the complaint on February 9, 2020.

57. Such information is necessary for the Union to properly defend its member because in its June 25, 2020 correspondence to Mr. Roth, CBS stated that CBS conducted an

investigation, that CBS "thoroughly investigated" that complaint against Mr. Roth, and that the "investigation revealed that [Mr. Roth's] behavior violated Company policy including the Company's Non-Discrimination and Anti-Harassment policy."

58. The Company allegedly relied on its investigators findings and report in reaching its decision to remove Mr. Roth from the referral list.

59. In arbitration, the Union must demonstrate a contractual violation of Sideletter 44 by showing the Company acted in an arbitrary and capricious manner. As such, the investigator's report, the investigator's notes, and the identity of individuals the investigator interviewed are clearly relevant to whether the Company's decision was arbitrary and capricious.

60. The Union has a right to question, or call as witnesses, those individuals that CBS allegedly interviewed as part of its investigation of the allegations against Mr. Roth.

61. The Union has the right to review the Investigator's report to determine whether a full and fair investigation was in fact conducted as well as to determine whether the statements the investigator attributes to interviewees were in fact made by those individuals.

62. Furthermore, the Union has an objective basis to question the investigation conducted by Mr. Roderick.

## CONCERNS REGARDING THE INVESTIGATOR

63. On or around December 17, 2019, Cassandra Vinograd commenced an action against CBS Broadcasting Inc. in New York State Supreme Court in New York County, Index #162157/2019. In the Complaint, Ms. Vinograd alleges, among other things, that Michael Gavshon, a 60 Minutes producer that was about thirty (30) years her senior, sent Ms. Vinograd a picture of himself and a friend from when they were younger, urinating on

coals with their penises exposed.  Ms. Vinograd raised this complaint, among others about Mr. Gavshon's behavior to her superiors and human resources.

64. According to the complaint, Mr. Roderick and Benjamin Matos told Ms. Vinograd to stay home and avoid the workplace if she was uncomfortable working with Mr. Gavshon. According to the Complaint, Mr. Roderick advised Ms. Vinograd to text Mr. Gavshon and tell him she would be out sick the rest of the week.

65. The complaint alleges that Mr. Roderick shared with Ms. Vinograd the memorandum of CBS's conclusions regarding Ms. Vinograd's complaint.  According to the Complaint, CBS accepted Mr. Gavshon's explanation "that he sent this photo to [Ms. Vinograd] entirely by accident and believe this was an isolated incident with no malicious intent on the part of Michael."

66. Upon information and belief, Mr. Gavshon is still employed by CBS.

67. CBS received the complaint against Mr. Roth less than two months after Ms. Vinograd's complaint was filed.

68. Michael Roderick was assigned to investigate the complaint against Mr. Roth.

69. Ms. Vinograd's complaint is peppered with allegations that Mr. Roderick did not conduct a full or fair investigation into her complaint and that his conclusions were inexplicable.

70. Upon information and belief, the Union notified CBS regarding its concerns about Mr. Roderick being assigned to investigate the claims raised against Mr. Roth.

Local 1200 is simply seeking relevant information regarding the investigation conducted by CBS into the allegations against Mr. Roth, whether it was a full and fair investigation, and whether the findings support CBS's decision remove Mr. Roth from the referral list.

## THE RESPONDENT MUST BE COMPELLED TO COMPLY
## WITH THE ARBITRAL SUBPOENA UNDER 9 U.S.C. § 7
## AND IN ACCORDANCE WITH THE PARTIES' CBA

71. CBS's failure to comply with the subpoena is a violation of the clear and consistent line of federal cases holding that it is the duty of the arbitrator to make procedural decisions during the course of an arbitration. *See John Wiley & Sons v. Livingston*, 376 U.S. 543 (1964); *Local 757, International Brotherhood of Teamsters v. Borden, Inc.,* 1971 WL 801 (S.D.N.Y. September 24, 1971) (holding "it is properly [the arbitrator's] function to determine the relevancy and materiality of the documents requested and whether production should be ordered.").

72. Here, the Arbitrator gave each party an opportunity to be heard on the subpoena, has already determined that the subpoenaed documents are probative, and has ordered their disclosure.

73. The Arbitrator was empowered to issue the subpoena pursuant to 9 U.S.C. § 7, which states, in pertinent part, that "arbitrators … may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. §7. This power is indisputable where an arbitrator is compelling production be made by a party to the arbitration. *See Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210 (2d Cir. 2008).

74. Furthermore, the parties agreed to arbitrate the subject matter of this dispute before the AAA in their CBA. The AAA's rules also gave the Arbitrator the explicit power to, *inter alia,* compel production of documents. *See* Rule 27 of AAA Labor Arbitration Rules, *supra*.

75. A subpoena issued by an arbitrator in a labor arbitration governed by Section 301 of the LMRA must be enforced by the federal courts to uphold the arbitrator's authority, and to enforce the resolution of disputes between parties to a collective bargaining agreement through arbitration.

76. As a result of CBS's refusal to comply with the subpoena issued by the Arbitrator, the Union is unable to obtain critical information necessary to defend its member at the arbitration hearing. CBS's refusal to comply with the subpoena has left the Union with no other recourse but to file the within Petition.

## THE SUBPOENAED INFORMATION IS RELEVANT AND IS NOT PROTECTED BY PRIVILEGE, CONFIDENTIALITY, or ATTORNEY-WORK PRODUCT.

77. Arbitrator Capone has been empowered by the parties, through the AAA rules of labor arbitration to determine the admissibility and materiality of evidence. After hearing arguments from Local 1200 and CBS, Arbitrator Capone determined that the requested information was relevant and material and issued a subpoena for CBS to produce such information.

78. It is well established law in this circuit that where a party relies on an internal investigation as the basis for a termination, it has placed that investigation "in issue." *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987). CBS cannot use its investigation as both a sword and a shield.

79. Upon information and belief, Mr. Roderick is not an attorney. Upon further information and belief, Mr. Roderick conducted the investigation into the allegations against Mr. Roth. Upon further information and belief, Mr. Roderick's report summarizes his alleged findings and makes a recommendation. Nothing about this document is an attorney work

product.  Nothing in this document warrants protecting the document as a privileged communication.

80. Similarly, Mr. Roderick's notes of the investigation are relevant to determine whether his notes from interviews he conducted were accurately transcribed to his final report as well as to determine whether his notes support the findings and recommendations of the report. There is no basis for claiming attorney-work product or privilege to prevent disclosure of Mr. Roderick's notes from the investigation.

81. Even if such document had some aspects of a privileged communication, a party that affirmatively relies on a privileged communication implicitly waives and claim of privilege.  *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *Hussain v. Burton & Doyle of Great Neck, LLC*, 2016 WL 10924 (S.D.N.Y. 1997); *Harding v. Dana Transport Inc.*, 914 F. Supp. 1084 (D.N.J. 1996); *Tribune Co. v. Purcigliotti*, 1997 WL 10924 (S.D.N.Y. 1997); *Pray v. New York City Ballet*, 285 F.R.D. 187, 198 (E.D.N.Y. 2012). Furthermore, any arguments raised by CBS are appropriately addressed, and have been addressed, by the Arbitrator.  *Odfjell Asa v. Celanese AG*, 348 F. Supp. 2d 283, 287 (S.D.N.Y. 2004), *aff'd sub nom. Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005).

**WHEREFORE,** Petitioner respectfully requests this Court enter an Order:

    a.   Compelling compliance with the arbitration subpoena dated March 19, 2021, as provided in 9 U.S.C. §7;

    b.   Compelling compliance with the Arbitrator's Subpoena pursuant to LMRA Section 301 and the parties' collective bargaining agreement;

    c.   for costs and expenses in connection with the prosecution of this action; and

    d.   for such other and further relief as this Court may deem just and equitable.


DATED:   April 28, 2021
            Woodbury, New York

                             COLLERAN, O'HARA & MILLS L.L.P.
                             Attorneys for Petitioner

                             By:   */s/ MICHAEL D. BOSSO*
                             MICHAEL D. BOSSO (MDB3941)
                             100 Crossways Park Drive West, Suite 200
                             Woodbury, New York 11797
                             Telephone: (516) 248-5757
                             Facsimile: (516) 742-1765
                             mdb@cohmlaw.com

**VERIFICATION**

STATE OF MARYLAND       )
                                 ) ss
COUNTY OF  MONTGOMERY  )

Geoff Turner, being duly sworn, deposes and says:

      I am the Plaintiff in the above-captioned action; I have read the foregoing Verified Complaint and know the contents thereof, the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

Dated: April 21, 2021

Geoff Turner

RONALD SINKER
Notary Public, Montgomery Co., MD
My Commission Expires May 21, 2023

20