```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| GEOFF TURNER, as Business Manager and on behalf of INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 1200, AFL-CIO,<br><br>   Petitioner,<br><br>  -v-<br><br>CBS BROADCASTING INC.,<br><br>   Respondent. | 21-cv-3766 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

  This is a petition to enforce an arbitral subpoena that seeks an internal investigation report and associated records from respondent CBS Broadcasting Inc. ("CBS"). The subpoena was issued by the arbitrator presiding over a grievance proceeding filed by the International Brotherhood of Electrical Workers Local 1200, AFL-CIO ("IBEW" or "Union"). The Union filed the arbitration on behalf of a freelance cameraman who filmed sporting events for CBS for many years but was removed from CBS's referral list for alleged sexual harassment. When it took this adverse action, CBS told the cameraman that it had "thoroughly investigated the complaint," and that it had removed the cameraman on that basis. Yet when the Union sought to subpoena the internal investigation documents, CBS refused, asserting that they are privileged. The Union then filed the instant petition, seeking to enforce the subpoena.

1

This petition therefore raises the novel legal issue of whether the Court is authorized to consider privilege objections to a subpoena that is the subject of a petition to enforce under Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7. Following reassignment to the undersigned of the fully briefed petition on January 18, 2022, the Court heard oral argument on March 3, 2022. Now, having considered the issue and the written and oral submissions of counsel, the Court holds that it is authorized, though not required, to consider a respondent's privilege objections on a section 7 petition. Nonetheless, the Court declines to exercise that authority in this case and so grants the Union's petition to enforce the arbitral subpoena, subject to the confidentiality limitations set forth in the conclusion of this opinion.

I.  **Background**

The underlying arbitration was brought by the IBEW in connection with a grievance it filed after a long-term, freelance cameraman was taken off the "referral list" of those cameramen eligible to be hired by CBS to film sports events. ECF 5 ("Pet.") ¶ 10. The cameraman was removed from the referral list because another CBS employee alleged that he had touched her without her consent during filming of the Pro-Am Golf Tournament at Pebble Beach, CA in February 2020. Pet. ¶¶ 23-36. An HR employee of CBS (the "Investigator") conducted an internal investigation of the complaint, which included interviews with the complainant and other witnesses. Pet ¶¶ 26-30. On or around June 25, 2020, the CBS director of HR informed the cameraman that CBS had

2

completed its investigation of the allegations. The HR director further stated that CBS had "thoroughly investigated the complaint" and that the company had concluded that the cameraman was "no longer eligible for employment on any future assignments" and was "disqualified from working for any other ViacomCBS event or their affiliated or related events." Pet. ¶¶ 34-35.

The Union filed a grievance and then filed for arbitration with the American Arbitration Association ("AAA") under the collective bargaining agreement ("CBA"), seeking that the cameraman be placed back on the referral list and be provided back pay for events he used to regularly work for CBS.[1] Pet. ¶¶ 41-45. The Union argues that the cameraman's removal from the referral list was arbitrary and capricious because CBS failed to conduct a full and fair investigation and because CBS treated him differently from other employees with similar allegations against them. Pet. ¶ 41. The Court assumes for the purposes of this petition that the cameraman's arbitrary and capricious removal from the referral list would violate the relevant provisions of the

---

[1] The freelance cameraman is not an employee of CBS but is nonetheless covered by the IBEW's CBA with CBS through "Sideletter 44," which provides that:

> After a Freelance or Per Diem employee has worked for two (2) consecutive years with the Employer, such Freelance or Per Diem employee will have preference of employment, meaning that a Freelance or Per Diem employee will not be eliminated from the referral process for arbitrary or capricious reasons.

The CBA further provides a grievance procedure, for which arbitration before the AAA is the final step.

3

CBA, although the Court's decision does not depend on that assumption. See supra n. 1.

In connection with the arbitration, IBEW's attorneys submitted an information request to CBS, seeking numerous categories of documents. See ECF 5-5. After discussions, CBS refused to produce the documents. Pet. ¶ 47. Pursuant to Rule 27 of the AAA's labor arbitration rules, the Union then asked the arbitrator to issue a subpoena for the information contained in its prior request.[2] See ECF 5-6. Following oral argument that necessarily concerned privilege and relevance issues, the arbitrator announced that he would sign and issue the requested subpoena to CBS, which subsequently accepted service by email. Pet. ¶¶ 52-54.

In response to the subpoena, CBS ultimately refused to provide certain documents relating to the internal investigation of the harassment complaint, maintaining its position that the documents were confidential, privileged attorney-client communications and/or attorney work product. See ECF 5-10 at 2. The Union asserted that the

---

[2] Rule 27 of the AAA's labor arbitration rules provides, in relevant part:

> An arbitrator or other person authorized by law to subpoena witnesses and documents may do so independently or upon the request of any party. The arbitrator shall determine the admissibility, the relevance, and materiality of the evidence offered and may exclude evidence deemed by the arbitrator to be cumulative or irrelevant and conformity to legal rules of evidence shall not be necessary.

AAA, Labor Arbitration Rules 14 (July 1, 2013), https://www.adr.org/sites/default/files/Labor_Arbitration_Rules_3.pdf

4

internal investigation documents are necessary to effectively defend the cameraman's interests in the grievance proceeding, because under the CBA the IBEW will need to show that CBS acted in an arbitrary and capricious manner in removing the cameraman from the referral list. Pet. ¶¶ 57-59.

The IBEW therefore filed the instant petition to enforce the arbitral subpoena under section 7 of the FAA, seeking the following categories of documents:

- The Investigator's investigation report.
- Any notes from the Investigator's investigation.
- Any documentation prepared in the course of the investigation of the allegations made against the cameraman.
- The names and contact information of the individuals interviewed by CBS as part of its investigation, or of the individual that made the complaint on February 9, 2020.

Pet. ¶ 56. The Union's petition argues that information is necessary to rebut CBS's assertion that it "thoroughly investigated" the complaint against the cameraman and that the investigation revealed that his behavior violated company policies. The Union further argues that there is reason to believe that other CBS employees have complained about sexual harassment investigations by the same CBS human resources employee, because those other investigations were purportedly not full and fair. See Pet. ¶¶ 63-70.

II. **Discussion**

   A. **Standard of Review**

"Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final

5

disposition should be left to the arbitrator." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964). Therefore, discovery and evidentiary issues that arise in the context of a pending arbitration proceeding are committed to the discretion of the arbitrator, at least in the first instance. But since arbitrators lack the means to compel compliance with their subpoenas, the FAA provides that parties in arbitration may seek the federal courts' assistance in enforcing arbitral subpoenas. The Union therefore filed this petition under section 7 of the FAA, which provides as follows:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

9 U.S.C. § 7.[3] It is undisputed that the arbitrator was authorized to compel pre-hearing production of documents from CBS, since it is a party to the arbitration. See Life Receivables Tr. v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 217 (2d Cir. 2008).

In opposition to the Union's petition, CBS asks the Court to decline to enforce the subpoena, arguing that it has a legal right not to produce these materials, which it asserts are subject to legal privileges. CBS argues that section 7's use of "may" gives the district court discretion to decline to enforce an arbitral subpoena. ECF 16

---

[3] This Court has jurisdiction because the arbitrator who issued the subpoena sits in this District. See Pet. ¶¶ 51-53.

("Opp.") 12. It further argues that a declination would be appropriate here, because the arbitrator purportedly exceeded his authority, since "CBS and [the IBEW] did not agree that an arbitrator could disregard the law regarding the attorney-client privilege and work product doctrine." Opp. 13.

CBS's argument -- that the subpoena should not be enforced because the arbitrator's decision was rendered in manifest disregard of the law or in excess of his powers under the contract – thus relies on the familiar standard for vacating an arbitral award. See, e.g., Weiss v. Sallie Mae, Inc., 939 F.3d 105, 109 (2d Cir. 2019). But none of the cases CBS cites has applied this standard to a section 7 petition to compel a subpoena. See Opp. 12-13. Relatedly, the Second Circuit has forbidden district courts considering a petition to vacate an arbitral award from revisiting the evidentiary record, except insofar as necessary for "discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law." Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004). Adopting CBS's view would permit a subpoena recipient to effectively transform a section 7 proceeding into an interlocutory appeal on evidentiary issues simply by refusing to comply with a subpoena. See OBEX, 958 F.3d at 138 ("Adopting the respondents' view would frustrate this policy by turning a district court into a full-bore legal and evidentiary appeals body, where arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process."). This would introduce

greater delay into arbitration than is available under the Federal Rules of Civil Procedure, a result that would run counter to the fundamental principles of arbitration law. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 685 (2010) ("In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes.").

Instead, when the Second Circuit has considered whether respondents may raise legal objections to an arbitral subpoena in opposition to a section 7 petition, it has framed the issue as whether a section 7 respondent may interpose an objection that sounds in one of the grounds set forth in Fed. R. Civ. P. 45(d)(3)(A). It provides:

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). CBS's attorney-client privilege and work-product objections are thus properly considered as objections under Fed. R. Civ. P. 45(d)(3)(A)(iii).

The underlying arbitrator here was undoubtedly empowered to decide privilege issues when determining whether to issue an arbitral subpoena. As this Court has previously explained, "one of the very reasons for making these subpoenas returnable before one or more members of the arbitration panel is so that the arbitrators can rule

8

on preliminary issues of admissibility, privilege, and the like. Indeed, section 7 would make no sense if it provided the arbitrators with the power to subpoena witnesses and documents but did not provide them the power to determine related privilege issues." Odfjell Asa v. Celanese AG, 348 F. Supp. 2d 283, 287 (S.D.N.Y. 2004), aff'd sub nom. Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567 (2d Cir. 2005). This was subsequently confirmed by the Second Circuit in a section 7 case in which the recipients of summonses had asserted objections under Rule 45 on grounds of privilege (among others). Washington Nat'l Ins. Co. v. OBEX Grp. LLC 958 F.3d 126, 139 (2d Cir. 2020). OBEX held that a district court hearing a section 7 petition is not obligated to consider objections based on Rule 45 because "[t]he [arbitration] panel is responsible for issuing summonses, hearing evidence, and ruling on objections." Id. But OBEX reserved the question effectively posed by IBEW's present petition: whether section 7 authorizes a district court to consider objections to pre-hearing discovery that sound in the grounds for quashing a subpoena set forth in Rule 45(d)(3)(A).

The Court faced a similar issue last year in Broumand v. Joseph and again avoided answering the question. 522 F. Supp. 3d 8, 22-23 (S.D.N.Y. 2021). Broumand concerned an objection to enforcement of a subpoena that would have "require[d] a person to comply beyond the geographical limits specified in Rule 45(c)." Fed. R. Civ. P. 45(d)(3)(A)(ii). Broumand avoided determining whether it was authorized to quash or not to enforce a subpoena only because the

9

"petitioner concede[d], that Rule 45(c)'s geographic limits apply to arbitral subpoenas." 522 F. Supp. 3d at 22, 22 n. 6. The Court also noted that enforcing "[t]he 100-mile limitation ... is straightforward; the arbitrator is no better positioned than is the Court to rule on it." Id. at 22 n. 6. But adjudicating an objection sounding in privilege "implicate[s] the merits of the underlying dispute," and so it "risk[s] turning a district court into 'full-bore legal and evidentiary appeals' body." Id. (quoting OBEX, 958 F.3d at 138).

As noted above, CBS's briefing does not engage with the Rule 45 framework set forth in OBEX and Broumand. The Union, for its part, agreed at oral argument that the Court has the authority, but of course not the obligation, see OBEX 958 F.3d at 139, to consider Rule 45 objections sounding in privilege.

The Court now holds that it is authorized to consider privilege objections sounding in Rule 45(d)(3)(A)(iii). As Rule 45(d)'s heading reflects, the subsection authorizes a district court to "protect[] a person subject to a subpoena" in the context of "enforcement." Fed. R. Civ. P. 45(d) (capitalization amended).[4] And section 7 of the FAA

---

[4] This text, which appears in the heading of Rule 45(d), should be given effect because "[u]nder the Rules Enabling Act, 28 U.S.C. §§ 2071-77, headings and text [of the Federal Rules of Civil Procedure] are promulgated together by the Supreme Court," so "[t]hey are equally authoritative." Dvorak v. Granite Creek GP Flexcap I, LLC, 908 F.3d 248, 251 (7th Cir. 2018). "No matter the right way to treat headings in statutes, which may be added by codifiers after a law is enacted, the headings, labels, and captions in the federal rules have the same source, and same authenticity, as the text of the rules." Id.

provides that the "district court ... may compel the attendance of such person ... before [an] arbitrator ... or punish said person ... for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States." 9 U.S.C. § 7. OBEX held that this language did not "impose Rule 45's obligations on district courts in proceedings to enforce arbitration summonses under section 7 of the FAA." OBEX, 958 F.3d at 138. OBEX therefore concluded that Rule 45(d)(3)(A)'s directive that a district court "must quash or modify an [objectionable] subpoena" does not apply in a section 7 proceeding.[5] Id. But the fact that in a section 7 proceeding the district court does not have its usual obligation to quash an objectionable subpoena does not mean that the Court is powerless to "protect a person subject to a subpoena" when a party seeks an arbitral subpoena's judicial "enforcement." Fed. R. Civ. P. 45(d) (capitalization amended).

In federal court litigation, Rule 45(d) is an important limitation on the ability of a civil litigant to harness the coercive powers of the judiciary against another person or entity through issuance and subsequent enforcement of a subpoena. The federal policy favoring efficient arbitration properly counsels deference to an arbitrator's adjudication of a dispute. But that policy does not oblige the district

---

[5] OBEX noted that "Rule 45 does not cover the[] processes" of "compulsion [and] contempt" that are the "manner[s in which] a subpoena is to be enforced," but it also observed that Rule 45 "notes the availability of each." 958 F.3d at 138, 138 n. 9.

11

court to uncritically deploy its coercive authority to compel production of documents and testimony whenever an arbitrator issues a subpoena at the request of a private party appearing before her.

In arbitration, as here, parties to the contract underlying the dispute have consented to have an arbitrator, rather than a federal or state court, resolve disputes about whether particular documents or information are discoverable. To the extent this prior consent was meaningfully obtained, that provides a particularly strong reason for a court considering a section 7 petition to defer to the arbitrator's determinations on privilege and confidentiality. But arbitral subpoenas may also be directed to non-parties, see, e.g., OBEX, 958 F.3d at 130, and non-parties generally have not consented to have their legal rights adjudicated by an arbitrator rather than a court. It would be improper to construe section 7 -- which expressly contemplates the possibility of a district court not enforcing an arbitral subpoena -- to prohibit a court from "protect[ing] a person subject to a subpoena" where the documents or testimony called for are clearly privileged. Fed. R. Civ. P. 45(d). To construe section 7 and Rule 45(d) otherwise would allow a private party engaged in arbitration to hijack the court's coercive power, even in cases of egregious misapplication of privilege law. While the federal policy favoring arbitration counsels deference to the substantive and procedural decisions of arbitrators, deference does not require abdication of the Court's duty not to protect people from enforcement of patently unlawful subpoenas.

As noted, Section 7 provides that a district court "may compel" the attendance of witnesses and production of documents before an arbitrator. The Court now concludes that among the reasons for which it is authorized to decline to grant a section 7 petition to compel is that the subpoena calls for clearly privileged information, disclosure of which is protected under Rule 45(d)(3)(A)(iii). But unlike in federal court litigation, the district court is not obligated to consider Rule 45(d) objections, OBEX, 958 F.3d at 138, and deference to the arbitrator's privilege and admissibility rulings (whether express or implicit) will be appropriate in the mine run of cases to avoid making a section 7 petition a vehicle to obtain, in effect, interlocutory appeal of discovery rulings obtained in arbitration.

B. **Application**

Applying the aforementioned balance, the Court determines that deference to the arbitrator's implicit privilege ruling is appropriate in this case. The Court therefore declines to exercise its authority to consider the merits of CBS's attorney-client privilege and work product protection objections to the instant subpoena.

To start, the Court notes that respondent CBS is party to the CBA that gave rise to the underlying arbitration of the workplace grievance at issue. For the reasons explained above, the rationale for deferring to an arbitrator's decisions on privilege issues is particularly strong where the objecting respondent is a party to the contract that gave rise to the underlying arbitration. In agreeing to arbitrate disputes that arose under its CBA with the Union, CBS elected to have an

arbitrator, rather than a court, resolve any discovery disputes that might ensue, including making decisions about CBS's assertions of legal privileges.

Furthermore, even a cursory review reveals that the arbitrator's implicit decision to overrule CBS's assertion of privilege over the internal investigation documents was anything but arbitrary. Before the arbitration, CBS argued that attorney-client privilege applies to the documents because the internal investigation was conducted at the behest of in-house counsel in order to inform that attorney's legal advice to the client corporation concerning any potential claims that the alleged victim might have against CBS. See ECF 17 ¶ 4. However, the Union persuasively argued that CBS put the internal investigation in issue in this dispute, because the CBA prohibited the cameraman's "arbitrary and capricious" removal and the only rationale CBS ever provided for the cameraman's removal was that the alleged victim's complaint was fully investigated and found to be meritorious. See ECF 5-2. While CBS has various rejoinders that it also raises here, they ultimately turn on issues inextricably intertwined with the merits of the underlying dispute, waters into which the Court declines to wade.

CBS also argued before the arbitrator that work product privilege applies because the in-house attorney "anticipated that either [the] victim or [the Union] would bring a claim against CBS," and so the investigation was conducted in anticipation of litigation. Opp. 9. But courts in this Circuit often hold that work product claims associated with internal investigation materials are considered in two parts:

14

those materials created to assist in a business decision such as firing an employee (these documents are often ordered to be produced) and those created after the start of litigation defense (often shielded). See, e.g., Robinson v. Vineyard Vines, LLC, 2016 WL 845283, at *3 (S.D.N.Y. Mar. 4, 2016) (collecting cases). Again, the Court declines to adjudicate CBS's privilege objection, but it notes that the arbitrator's implicit rejection of CBS's position is far from arbitrary.

In the alternative, CBS now asks the Court to permit it to produce the materials requested by the subpoena in a manner calculated to protect the privacy interests of CBS and the alleged victim of sexual harassment. Specifically, CBS asks the Court to permit it to redact the names of the person who complained about the alleged harassment and of the non-management witnesses who were interviewed for the internal investigation. Opp. 14-16. CBS argues that disclosure of these names would subject these non-parties to retaliation and would, in the long run, create a chilling effect on complainants and witnesses within CBS that would dissuade them from cooperating with any future internal investigation. Id. The Union, in response, argues that these redactions would prejudice its representation of its member in the grievance arbitration, because it seeks to have counsel interview the witnesses to assess the internal investigation's thoroughness and fairness. In support, IBEW notes that New York Labor Law § 201-g(1) requires that employers adopt sexual harassment prevention policies that include "a procedure for the timely and confidential investigation

15

of complaints and ensure due process for all parties," N.Y. Lab. L. § 201-g(1)(a)(iv), which it argues makes an internal investigation a business imperative rather than means of preparing for litigation.

The Court recognizes the equities on both sides of this issue. To protect the privacy interests of the non-parties named in these materials and to ensure that the Union may adequately represent its member, the Court concludes that it is appropriate for the internal investigation materials at issue to be produced pursuant to a protective order that limits disclosure of the nonparties' names to counsel only.

## III. Conclusion

For the reasons set forth above, the Court holds that it has discretionary authority to adjudicate the merits of CBS's privilege claims, but the Court declines to exercise that authority and accordingly grants IBEW's petition to enforce the arbitral subpoena. CBS is therefore directed to produce to the Union the documents called for in the subpoena dated March 19, 2021 within 14 days of the entry of this order. Within 7 days of the entry of this order, the parties shall submit to the Court a proposed protective order limiting disclosure of the names of nonparty witnesses to counsel only.

The Clerk is respectfully directed to close the case.

SO ORDERED.

New York, NY
April 25, 2022

_____
JED S. RAKOFF, U.S.D.J.